IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-29-D

| | |
|---|---|
| ZACHERY MICHAEL CRAIN,<br><br>Plaintiff,<br><br>v.<br><br>ZACHARY MICHAEL DEBARTOLO,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **ORDER** |

On January 30, 2014, Zachery Crain ("Crain" or "plaintiff") sued Zachary DeBartolo ("DeBartolo" or "defendant"), seeking to remove DeBartolo as a joint inventor of United States Patent No. 8,104,636 ("the '636 patent"), pursuant to 35 U.S.C. § 256 [D.E. 1]. On March 10, 2014, DeBartolo answered and filed a counterclaim against Crain for breach of contract [D.E. 9]. The contract at issue is a settlement agreement between DeBartolo and Crain that resolved a 2013 state-court lawsuit between them concerning their business relationship. On May 1, 2014, DeBartolo filed a motion for summary judgment on his breach of contract counterclaim [D.E. 26] and filed a supporting memorandum [D.E. 27, 30]. Crain responded in opposition [D.E. 35] and DeBartolo replied [D.E. 40, 42]. On July 15, 2014, Crain filed a motion for leave to join an additional party and amend the complaint [D.E. 46] and a supporting memorandum [D.E. 48]. DeBartolo responded in opposition [D.E. 56] and Crain replied [D.E. 58]. As explained below, the court denies DeBartolo's motion for summary judgment and grants Crain's motion for leave to join an additional party and amend the complaint.

I.

In 2007, Crain conceived of a jacket that would fit on bottles and other containers. Crain Decl. [D.E. 36] ¶ 3. He intended for this jacket, known as a cozy, to have insulating properties, be

moisture-resistant, and be capable of displaying different looks. Id. ¶ 5. In July 2008, Crain met DeBartolo. Id. ¶ 6; DeBartolo Decl. [D.E. 31] ¶ 3. The two parties discussed working together, with DeBartolo offering financial resources and business experience and Crain working on product development. Crain Decl. ¶¶ 7–8, 11; DeBartolo Decl. ¶ 4.

Crain and DeBartolo agreed to form Freaker Inc. as equal partners. Crain Decl. ¶ 12. DeBartolo initiated a patent application for the cozy design. DeBartolo Decl. ¶ 8. The relationship between Crain and DeBartolo deteriorated, however, and Freaker Inc. dissolved in early 2011. Crain Decl. ¶¶ 17–18; cf. [D.E. 36-1]. Nonetheless, on January 21, 2012, the United States Patent and Trademark Office issued a patent to Crain and DeBartolo as joint inventors of an "insulating knit bottle cozy jacket." Patent '636 [D.E. 28-3] 9–15.

The parties disagree on the status of the cozies when they met. Crain claims that he had already planned to produce them on a circular knit machine to eliminate the then-existing seam on the cozy and had already "conceived" of different features, including spandex parts to make the cozy stretchable. Crain Decl. ¶¶ 4, 6. DeBartolo claims that Crain's initial prototypes were not stretchable and that he, not Crain, discovered the use of circular knitting machines to avoid making a seam in the cozy design. DeBartolo Decl. ¶¶ 5–7.

On January 7, 2013, DeBartolo sued Crain in state court, alleging fraud, breach of partnership agreement, breach of fiduciary duty, and securities fraud. See [D.E. 28-2]. On October 9, 2013, after mediation, the parties signed a settlement agreement. Settlement Agreement [D.E. 9-1]. Two provisions of this settlement agreement are central to DeBartolo's motion for summary judgment. The first provision states, in part, that "each Party agrees that he will not remove or replace the other Party from the Patent." Id. ¶ 4. The second provision states, in part, that "notwithstanding anything to the contrary herein, nothing in this Agreement shall be deemed to prevent a party from taking any

2

action to maintain or ensure the validity of the Patent." Id. ¶ 4.c.

II.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of showing an absence of genuine dispute of material facts or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If a moving party meets its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation and emphasis omitted). There is a genuine issue for trial if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that might affect the outcome under substantive law properly preclude summary judgment. Anderson, 477 U.S. at 248. In reviewing the factual record, the court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. Matsushita, 475 U.S. at 587–88.

In evaluating DeBartolo's motion for summary judgment, the court applies North Carolina law. See Settlement Agreement ¶ 20. Under North Carolina law, a party alleging breach of contract must prove the existence of a valid contract and breach of the terms of the contract. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005), disc. rev. denied, 360 N.C. 290, 627 S.E.2d 621 (2006); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000); Jackson v.

3

Carolina Hardwood Co., 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995). The parties do not dispute the validity of the settlement agreement. Rather, they dispute the meaning of its terms and whether a breach occurred.

In interpreting a contract, the court "examine[s] the language of the contract itself for indications of the parties' intent at the moment of execution." State v. Philip Morris USA Inc., 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." Id. at 773, 618 S.E.2d at 225 (quotation omitted). "Intent is derived not from a particular contractual term but from the contract as a whole." Id. at 773, 618 S.E.2d at 225; see Jones v. Casstevens, 222 N.C. 411, 413–14, 23 S.E.2d 303, 305 (1942). A court may interpret a contract as a matter of law if the dispositive contractual language is unambiguous or if extrinsic evidence in the record is dispositive of the interpretive issue. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 245 (4th Cir. 1992).

Paragraph 4 of the settlement agreements bars Crain's action and warrants granting DeBartolo's motion for summary judgment on his breach of contract counterclaim unless the settlement agreement elsewhere authorizes Crain's action. See Settlement Agreement ¶ 4 ("[E]ach party agrees that he will not remove or replace the other Party from the Patent."). For that authorization, Crain cites paragraph 4.c of the settlement agreement, which states:

> Maintenance of the '636 Parent. The Parties acknowledge and agree that maintaining and ensuring the validity of the Patent is of primary importance. Either Party may undertake any action necessary to maintain the validity of Patent and that Party shall be solely responsible for the associated expense. To avoid any possible confusion, notwithstanding anything to the contrary herein, nothing in this Agreement shall be deemed to prevent a Party from taking any action to maintain or ensure the validity of the Patent.

Settlement Agreement ¶ 4.c. Crain argues that: (1) the "notwithstanding" provision in paragraph 4.c trumps the earlier provision in paragraph 4; and (2) Crain's action pursuant to 35 U.S.C. § 256

4

is an action "to maintain or ensure the validity of the ['636] Patent." Pl.'s Mem. Opp'n Summ. J. [D.E. 35] 10–14.

As for Crain's first argument, the court agrees that a "notwithstanding clause" in a statute trumps an earlier provision in a statute if there is conflict. See, e.g., Cisneros v. Alpine Ridge Grp., 508 U.S. 10, 17–19 (1993) (noting that in the statutory context "the use of such a 'notwithstanding clause' clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions"); accord Shomberg v. United States, 348 U.S. 540, 545–48 (1955) (same); United States v. Lambert, 395 F. App'x 980, 981 (4th Cir. 2010) (per curiam) (unpublished) (same); In re FCX, Inc., 853 F.2d 1149, 1154 (4th Cir. 1988) (same); Springs v. Stone, 362 F. Supp. 2d 686, 697–98 (E.D. Va. 2005) (same); Yan-Min Wang v. UNC-CH Sch. of Med., 216 N.C. App. 185, 194–95, 716 S.E.2d 646, 652–53 (2011) (same); Martin & Loftis Clearing & Grading, Inc. v. Saieed Constr. Sys. Corp., 168 N.C. App. 542, 545, 608 S.E.2d 124, 127 (2005) (same). The principle also applies to a "notwithstanding clause" in a contract. See, e.g., Morse/Diesel, Inc. v. Trinity Indus., Inc., 67 F.3d 435, 439 (2d Cir. 1995) (finding that a contract's "notwithstanding" clause, "by its unequivocal language" trumped "the otherwise inconsistent clauses"); Broad Street Energy v. Endeavor Ohio, LLC, 975 F. Supp. 2d 878, 885 (S.D. Ohio 2013) (applying Cisneros's "notwithstanding-clause" analysis to a contract provision). Moreover, given that "North Carolina has long recognized that parties generally are free to contract as they deem appropriate," the court predicts that the Supreme Court of North Carolina would apply this principle in construing the settlement agreement. Christie v. Hartley Constr., Inc., No. 359A13, 2014 WL 7267474, at *4 (N.C. Dec. 19, 2014) (quotation omitted); cf. Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005) (sitting in diversity and construing North Carolina law, a federal court must attempt to divine what the Supreme Court of North Carolina "would do were

5

it faced with this [case]").

Next, the court considers whether Crain's action pursuant to 35 U.S.C. § 256 is "any action to maintain or ensure the validity of the Patent." Settlement Agreement ¶ 4.c. Section 256 permits a court to "order correction of the patent on notice and hearing of all parties concerned" where a person is erroneously named as the inventor on an issued patent. 35 U.S.C. § 256(b); Iowa State Univ. Research Found., Inc. v. Sperry Rand Corp., 444 F.2d 406, 409–10 (4th Cir. 1971). Section 256 is a "remedial provision" that allows parties to correct the named inventors on a patent because "if more persons than the true inventors are named, the patent is void." Iowa State Univ. Research Found., 444 F.2d at 408; see Jamesbury Corp. v. United States, 518 F.2d 1384, 1395 (Ct. Cl. 1975) (per curiam) (adopting opinions of the trial judge). Patent issuance creates a presumption that the named inventors are "the true and only inventors." Caterpillar Inc. v. Sturman Indus., Inc., 387 F.3d 1358, 1377 (Fed. Cir. 2004). A party contesting inventorship may overcome this presumption by clear and convincing evidence. Id.

DeBartolo argues that paragraph 4.c concerns each party's ability to defend the patent's validity from third-party attacks based on principles such as prior art, obviousness, or an impermissibly indefinite specification. Reply Supp. Def.'s Mot. Summ. J. [D.E. 42] 3–4. According to DeBartolo, paragraph 4.c does not permit Crain's lawsuit because that interpretation would contradict the intent of the parties in paragraph 4. See id. In support, DeBartolo cites extrinsic evidence from the state-court mediation leading to the settlement agreement and argues that the parties did not intend to permit either party to remove or replace the other from the patent despite the language of paragraph 4.c. See Mem. Supp. Def.'s Mot. Summ. J. [D.E. 27, 30] 6–7.

The settlement agreement is an integrated contract. See Settlement Agreement ¶ 12. Thus, the court may consider extrinsic evidence to determine the intent of the parties only if it first finds

6

the settlement agreement to be ambiguous. See Root v. Allstate Ins. Co., 272 N.C. 580, 587–88, 158 S.E.2d 829, 835–36 (1968); Hinshaw v. Wright, 105 N.C. App. 158, 164, 412 S.E.2d 138, 142–43 (1992); Lalanne v. Lalanne, 52 N.C. App. 558, 559, 279 S.E.2d 25, 26–27 (1981). Paragraph 4.c states that "nothing in this Agreement shall be deemed to prevent a Party from taking any action to maintain or ensure the validity of the Patent." Settlement Agreement ¶ 4.c (emphasis added). This language certainly encompasses the defensive actions against third parties that DeBartolo contemplates. The language does not, however, restrict the possible actions either party may take to maintain the validity of the patent, including an action under section 256 to correct an alleged error that would invalidate the patent if ignored. Indeed, DeBartolo's proposed construction impermissibly conflicts with the settlement agreement's plain language that a party may take "any action to maintain or ensure the validity of the Patent." Settlement Agreement ¶ 4.c (emphasis added).[1]

Alternatively, DeBartolo correctly notes that the court must examine the contract as a whole to determine the intent of the parties. See Phillip Morris, 359 N.C. at 773, 618 S.E.2d at 225. He then argues that Crain's lawsuit breached the settlement agreement even if it falls within paragraph 4.c. Reply Supp. Def.'s Mot. Summ. J. 3–4.

---

[1] Even were the court to find the language of paragraph 4.c ambiguous, the extrinsic evidence that DeBartolo cites does not illuminate the parties' intent concerning paragraph 4.c. The extrinsic evidence, which consists of a series of notes between Crain and DeBartolo during their state-court mediation, consists of four or five negotiating points that relate to other written parts of the Settlement Agreement. See Mediation Notes [D.E. 28-3] 1–8. The first three points on every version of the notes comport respectively with paragraphs 4, 4.a, and 4.b, and the remaining points relate to other sections. Compare Settlement Agreement 2–3, with Mediation Notes 1–8. DeBartolo correctly states that the first point in each version is that "[n]either party will take steps to remove the other from the patent." Mediation Notes 3, 5, 7; see Mem. Supp. Def.'s Mot. Summ. J. 6. Although this language underscores the intent of the parties concerning paragraph 4, the notes do not clarify any potentially ambiguous language contained in paragraph 4.c. Cf. Root, 272 N.C. at 587, 158 S.E.2d at 835 (noting the "general rule" that a written instrument's "terms may not be contradicted by parol or extrinsic evidence").

7

The court rejects DeBartolo's argument. First, as discussed, the "notwithstanding" clause in paragraph 4.c trumps conflicting language in paragraph 4 of the settlement agreement. Second, DeBartolo's proposed contractual interpretation focuses solely on paragraph 4 and discounts the plain language of paragraph 4.c, the same error he asserts Crain has made. Assuming arguendo that Crain's allegations of sole true ownership are correct, under DeBartolo's interpretation of the contract, Crain could take no action to clarify the true ownership and the patent would be void. Under that scenario, neither party would have a patent, contrary to the plain language in paragraph 4.c that "[t]he Parties acknowledge and agree that maintaining and ensuring the validity of the Patent is of primary importance." Settlement Agreement ¶ 4.c. Although paragraph 4.c certainly includes the defensive measures against third parties that DeBartolo discusses in his reply brief, the language in paragraph 4.c does not limit itself to such measures. Rather, the contractual interpretation that accounts for both paragraph 4 and paragraph 4.c is that Crain can take no action to remove DeBartolo from the '636 patent unless DeBartolo's continued presence as a named inventor would render the patent invalid.

DeBartolo makes additional arguments that the court addresses briefly. First, DeBartolo argues that paragraph 4.c does not authorize Crain's action because the action asserts, implicitly or explicitly, that the patent is currently invalid and therefore it is not an action to "maintain" the patent's validity. Reply Supp. Def.'s Mot. Summ. J. 4–5. However, section 256 states that "[t]he error of . . . naming persons who are not inventors shall not invalidate the patent in which such error occurred <u>if it can be corrected</u> as provided in this section." 35 U.S.C. § 256 (emphasis added). Under section 256, Crain's action does not seek a declaration that the patent is invalid but constitutes an action to prevent the patent from becoming invalid. In other words, Crain's action seeks to maintain or ensure the patent's validity.

8

Second, DeBartolo argues that the mutual release of liability in the settlement agreement bars Crain's lawsuit. Reply Supp. Def.'s Mot. Summ. J. 5. As DeBartolo himself notes, however, the mutual release is "subject to the terms and conditions of this Agreement." Id.; Settlement Agreement ¶ 3. Paragraph 4.c is one of the terms of the agreement. Thus, the argument fails.

Third, DeBartolo contends that ambiguities in the settlement agreement are resolved against Crain, who drafted the agreement. Reply Supp. Def.'s Mot. Summ. J. 7; see Phillip Morris, 359 N.C. at 773 n.14, 618 S.E.2d at 225 n.14. As noted, however, the language of paragraph 4.c is not ambiguous. Accordingly, the argument fails.

Finally, DeBartolo asserts that public policy favors enforcing the provision in paragraph 4. Reply Supp. Def.'s Mot. Summ. J. 7–8. In support he cites Baseload Energy, Inc. v. Roberts, 619 F.3d 1357 (Fed. Cir. 2010), for the proposition that public policy strongly supports "enforcing settlement agreements in the patent context." Reply Supp. Def.'s Mot. Summ. J. 8. Baseload Energy involved a dispute between a patentee and a former licensee where the former licensee, after signing a settlement agreement with the patentee, sued for a declaratory judgment that the patent was invalid. Baseload Energy, 619 F.3d at 1358–60. The Federal Circuit held that a settlement agreement may waive later claims "only if the language of the agreement or consent decree is clear and unambiguous." Id. at 1362. The Federal Circuit then found the absence of clear contractual language and reversed the district court's grant of summary judgment to the patentee. Id. at 1363–64.

Unlike Baseload Energy, the dispute between Crain and DeBartolo is not one between patentee and licensee, and Crain is not asking the court to declare the patent invalid. Furthermore, when read as a whole, the settlement agreement unambiguously permits Crain or DeBartolo to "undertake any action necessary to maintain the validity of the Patent" and does not prevent Crain

9

from seeking to correct an alleged error in the patent pursuant to section 256. Thus, the public policy favoring settlement agreements supports enforcing the settlement agreement.

III.

Next, the court considers Crain's motion for leave to join an additional party and to add an additional claim. Crain seeks to join Freaker USA Inc. ("Freaker USA"), the assignee of Crain's rights, title, and interests in the '636 patent. See [D.E. 46]; [D.E. 48-2] 5–9. The court may join a person as a party if that person "assert[s] any right to relief . . . arising out of the same transaction . . . and any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). A district court has broad discretion to join a party under Rule 20. Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 218 n.5 (4th Cir. 2007) (quotation omitted); Saval v. BL Ltd., 710 F.2d 1027, 1031 (4th Cir. 1983). As an assignee and owner of the '636 patent, Freaker USA has a right to relief, pursuant to 35 U.S.C. § 256, that arises from the same patent application and issuance as Crain's right to relief as a listed coinventor. The same questions of fact and law concerning the true ownership of the '636 patent are common to Crain and Freaker USA. Thus, the court grants Crain's motion for leave to add Freaker USA as an additional plaintiff.[2]

Crain also seeks leave to amend his complaint to add a breach of contract claim against DeBartolo. See [D.E. 46] 2. A court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182 (1962); Island Creek Coal Co. v. Lake Shore, Inc., 832 F.2d 274, 279 (4th Cir. 1987). The court should deny leave "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir.

---

[2] The court rejects DeBartolo's objection that the settlement agreement makes joining Freaker USA futile. Freaker USA, like Crain, is not barred by the settlement agreement from bringing an action pursuant to section 256 to correct a purported error of inventorship.

10

1986); Island Creek Coal, 832 F.2d at 279.

DeBartolo objects to granting leave to amend the complaint and argues that the proposed amendment is futile. See Def.'s Resp. Mot. File Am. Compl. [D.E. 56] 3–5. Amendment of a complaint to add an additional claim is futile when the additional claim would not survive a motion to dismiss under Rule 12(b)(6). See, e.g., Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011); Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995).

A motion to dismiss under Rule 12(b)(6) tests the legal and factual sufficiency of a complaint. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 543 (4th Cir. 2013); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). The court need not accept a complaint's conclusions of law. See Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 555; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). As for a complaint's factual sufficiency, a party must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "[N]aked assertions of wrongdoing" cannot "cross the line between possibility and plausibility of entitlement to relief." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotation omitted); see Vitol, S.A., 708 F.3d at 543. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. A plaintiff armed with nothing more than "labels and conclusions" or a formulaic recitation of the elements of a cause of action cannot proceed. Twombly, 550 U.S. at 555 & n.3; Vitol, S.A., 708 F.3d at 543; Francis, 588 F.3d at 193.

In considering a motion to dismiss, a court must focus on the complaint. The court also may consider documents attached to the complaint if they "are integral to the complaint and authentic."

11

Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

Crain's proposed amended complaint includes an additional claim for breach of contract. See Proposed Am. Compl. [D.E. 47] ¶¶ 39–43. Crain alleges that Freaker USA entered into agreements with Bed Bath & Beyond and Wal-Mart to sell products covered by the '636 patent. Id. ¶¶ 25–27. After DeBartolo allegedly received notice of these agreements, Kolder, Inc. ("Kolder"), DeBartolo's licensee, allegedly solicited or contacted Bed Bath & Beyond and Wal-Mart in order to sell products covered by the '636 patent. Id. ¶¶ 29–33. Crain alleges that this conduct violates paragraph 4.a of the settlement agreement. Id. ¶¶ 34, 40–41.

A party alleging breach of contract must prove the existence of a valid contract and breach of the terms of the contract. See McLamb, 173 N.C. App. at 588, 619 S.E.2d at 580; Poor, 138 N.C. App. at 26, 530 S.E.2d at 843; Jackson, 120 N.C. App. at 871, 463 S.E.2d at 572. The parties do not dispute the validity of the settlement agreement. Paragraph 4.a of the settlement agreement, which the court may consider because the document is integral to the proposed amended complaint and authentic, states that

> [t]he Parties agree that as identified inventors, each Party may enter into an agreement with any third party to grant a license or otherwise commercialize the Patent (each, a "Patent Agreement") without incurring any financial obligation to the other Party. . . . If a Party enters into a Patent Agreement, that Party shall notify the other Party in writing. . . . The Party receiving such notice shall not, during the term of the Patent Agreement, solicit or contact any party to the Patent Agreement for any reason relating to commercialization of the Patent, and shall prevent any of his agents/licensees from soliciting or contacting any such party for any reason relating to commercialization of the Patent.

Settlement Agreement ¶ 4.a. DeBartolo first argues that "commercialization" does not include "[p]roduct distribution agreements." Def.'s Resp. Mot. File Am. Compl. 4–5. Commercialize is defined, among other meanings, as "to subject to the conditions of commerce" or "to cause to be

12

sold, manufactured, displayed, or utilized so as to yield income." Webster's Third New International Dictionary 456 (1993) (emphasis added). The parties' use of the disjunctive 'or' suggests that the so-called "Patent Agreements" are not limited to license agreements, contrary to DeBartolo's assertion. The court, however, need not determine the precise contours of the agreement's language at this point. Assuming that Crain's allegations are true, Crain and Freaker USA plausibly allege a breach of contract by Kolder's solicitation of Bed Bath & Beyond and Wal-Mart. Thus, the amendment is not futile. Whether Crain's breach of contract claim will survive a motion for summary judgment is an issue for another day.

DeBartolo next hints, without explanation, that interpreting the settlement agreement to prohibit Kolder's solicitation of Bed Bath & Beyond and Wal-Mart would violate federal and North Carolina antitrust laws. See Def.'s Resp. Mot. File Am. Compl. 5. Section 1 of the federal Sherman Act prohibits anticompetitive agreements. See 15 U.S.C. § 1; Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 551 U.S. 877, 885 (2007) ("[T]he Court has repeated time and again that [section] 1 outlaws only unreasonable restraints." (quotation omitted)); Texaco Inc. v. Dagher, 547 U.S. 1, 5 (2006). Some agreements are deemed so anticompetitive that they are per se illegal. See, e.g., Texaco, 547 U.S. at 5 (horizontal price-fixing agreements between competitors are per se unlawful); Palmer v. BRG of Ga., Inc., 498 U.S. 46, 49–50 (1990) (per curiam) (agreements between competitors to divide geographical markets are per se unlawful); United States v. New Wrinkle, Inc., 342 U.S. 371, 378–80 (1952) (horizontal agreements between competitors to fix prices through patent pools are per se unlawful). Other agreements are presumptively anticompetitive and courts apply "quick-look" scrutiny. See FTC v. Actavis, Inc., 133 S. Ct. 2223, 2237 (2013) (stating that quick-look analysis is "appropriate only where an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect

13

on customers and markets" (quotation omitted)); Cal. Dental Ass'n v. FTC, 526 U.S. 756, 769–70 (1999); N.C. State Bd. of Dental Exam'rs v. FTC, 717 F.3d 359, 373–74 (4th Cir. 2013), cert. granted, 134 S. Ct. 1491 (2014); Cont'l Airlines, Inc. v. United Airlines, 277 F.3d 499, 508–09 (4th Cir. 2002). Generally, however, courts "presumptively appl[y] rule of reason analysis, under which antitrust plaintiffs must demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive before it will be found unlawful." Texaco, 547 U.S. at 5; see Leegin, 551 U.S. at 885 ("The rule of reason is the accepted standard for testing whether a practice restrains trade in violation of [section] 1."); Cont'l Airlines, 277 F.3d at 509; United States v. Microsoft Corp., 253 F.3d 34, 58–59 (D.C. Cir. 2001) (en banc) (per curiam) (describing the rule of reason analysis).

Paragraph 4.a is not so "manifestly anticompetitive . . . and lack[ing] any redeeming virtue" that it is per se illegal, Leegin, 551 U.S. at 886, and it is not so facially anticompetitive that it is presumptively unlawful under a quick-look analysis. The settlement agreement does not forbid all competition between Crain and DeBartolo in their efforts to "otherwise commercialize" the '636 patent. Each party is free to compete to make agreements with producers and distributors. Before the alleged agreement between Freaker USA and Bed Bath & Beyond, for example, DeBartolo or Kolder were free to offer better terms to Bed Bath & Beyond in order to win its distribution services. What the settlement agreement prohibits is solicitation or contact after the agreement is signed between the non-party and "any party to the Patent Agreement" regarding the commercialization of the '636 patent. Settlement Agreement ¶ 4.a. Although the breadth of the solicitation and contact ban is potentially troubling concerning future competition for services, DeBartolo has failed to advance any theory, plausible or not, of anticompetitive harm resulting from the settlement agreement. Indeed, he has failed even to allege a relevant product or geographic market in which such harm might occur. See United States v. E.I. du Pont de Nemours & Co., 353 U.S. 586, 593

14

(1957) ("Determination of the relevant market is a necessary predicate to a finding of a violation" of the antitrust laws); Robertson v. Sea Pines Real Estate Cos., 679 F.3d 278, 290 (4th Cir. 2012); Cont'l Airlines, 277 F.3d at 509 (noting that a plaintiff in a rule of reason case "must prove what market was restrained" (quotation and alteration omitted)); Oksanen v. Page Mem'l Hosp., 945 F.2d 696, 708 (4th Cir. 1991) (noting that "the reasonableness of a restraint is evaluated based on its impact on competition as a whole within the relevant market"); Satellite Television & Associated Res., Inc. v. Cont'l Cablevision of Va., Inc., 714 F.2d 351, 355 (4th Cir. 1983) ("The plaintiff in an antitrust case bears the burden of proof on the issue of the relevant product and geographic markets"). The court will not deny leave to amend the complaint based on DeBartolo's vague and unsubstantiated allegations of antitrust violations.[3] Thus, the court grants Crain's motion to amend the complaint to add the additional breach of contract claim against DeBartolo.

IV.

In sum, the court DENIES DeBartolo's motion for summary judgment on his breach of contract counterclaim [D.E. 26] and GRANTS Crain's motion for leave to join Freaker USA as an additional party and to amend the complaint [D.E. 46]. Crain shall file the amended complaint no later than January 16, 2015. DeBartolo may respond in accordance with the Federal Rules of Civil Procedure.

---

[3] DeBartolo also suggests that paragraph 4.a of the settlement agreement may violate N.C. Gen. Stat. § 75-1. See Def.'s Resp. Mot. File Am. Compl. 5. "Federal case law interpretations of the federal antitrust laws are persuasive authority in construing [North Carolina] antitrust statutes." Hyde v. Abbott Labs., Inc., 123 N.C. App. 572, 578, 473 S.E.2d 680, 684 (1996); see Madison Cablevision, Inc. v. City of Morganton, 325 N.C. 634, 656, 386 S.E.2d 200, 213 (1989). Section 75-1 is nearly identical to section 1 of the Sherman Act, although North Carolina law also prohibits agreements that "violate[] the principles of the common law." N.C. Gen. Stat. § 75-2. DeBartolo does not indicate any common law principle that paragraph 4.a of the settlement agreement violates. Thus, the court rejects DeBartolo's contention that the proposed amendment is futile based on North Carolina antitrust law.

15

SO ORDERED. This 6 day of January 2015.

                                      JAMES C. DEVER III
                                      Chief United States District Judge